UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TORONTO GARDETTE,

               Plaintiff,               Case No. 1:23-cv-533

v.                                  Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi

Washington, MDOC Legal Administrator Richard Russell, Wellpath Care (Wellpath),[1] and Wellpath Chief Executive Officer Jorge Dominsic, as well as the following MCF officials and medical personnel: Warden James Schiebner; Acting Deputy Warden John Kludy; Health Unit Manager Michael Wilkinson; Acting Health Unit Manager Mary E. Anderson;[2] Acting Nurse Supervisor Tamerla Hamilton; Nurses Unknown Mitteer and Unknown Rexford; and Correctional Officer Unknown Roedig. (Compl., ECF No. 1, PageID.1–4.)

In Plaintiff's complaint, he alleges that on June 12, 2022, he submitted a health care kite, "complaining of lower back and left leg pain." (*Id.*, PageID.4.)[3] Plaintiff states that for the next two days, he "was unable to walk, stand, or sit due to severe lower back pain and pain in his left leg." (*Id.*) On June 14, 2022, Plaintiff "experienced complete numbness in his entire left leg causing Plaintiff to topple to the floor." (*Id.*) Non-party correctional officer Shilander (not a party) saw Plaintiff fall and "immediately offered her assistance." (*Id.*) Shilander then telephoned health services and spoke with Defendant Roedig, informing Roedig "that Plaintiff claimed to be in extreme pain and needed immediate medical care." (*Id.*) Shilander instructed Plaintiff to go to health services. (*Id.*)

---

[1] From the case caption of Plaintiff's complaint, it is unclear whether he intended to name Wellpath as a Defendant. Regardless, liberally construing the complaint as the Court is required to do, the Court will address Wellpath as if Plaintiff named this entity as a Defendant in this action. (*See* Compl., ECF No. 1, PageID.1; *see also id.*, PageID.12 (stating that "[t]he company is being sued in its official capacity as a legal entity").)

[2] In the case caption of Plaintiff's complaint, he identifies the Acting Health Unit Manager as "Mary E. Anderson"; however, when listing the parties in the body of his complaint, he identifies the Acting Health Unit Manager as "Mary E. Cannon." (Compl., ECF No. 1, PageID.1, 3.) The Court will refer to this Defendant as "Defendant Anderson." To the extent that Mary Anderson and Mary Cannon are two separate people, the Court's resolution of Plaintiff's claims in this opinion applies to both Mary Anderson and Mary Cannon.

[3] In addition to filing his complaint, Plaintiff filed four affidavits. (*See* ECF Nos. 3, 4, 5.)

Upon Plaintiff's arrival at health services, Defendant Roedig asked Plaintiff why he was there, and Plaintiff advised Defendant Roedig "that he was the prisoner from housing unit 5 that . . . Shilander had phoned about" and "that he was seriously injured and dealing with extreme pain in his lower back as well as experiencing numbness in his entire left leg and needed immediate medical care." (*Id.*) In response, Defendant Roedig stated: "Well, Shilander don't run shit over here, I do, and I didn't tell her you could come over here so you'll just be sitting here waiting until somebody gets ready to call you." (*Id.*, PageID.4–5.) Due to the "severe pain in his lower back and left leg," Plaintiff was unable to sit in a chair, and instead, "resolved to lie on the floor and remained on the floor in the waiting area, sprawled with his left leg extended outwards away from his body." (*Id.*, PageID.5.) Plaintiff states that he was "left unattended" for approximately two hours. (*Id.*) At some point, Defendant Anderson and a non-party nurse entered the health services building and Plaintiff advised them that "he was experiencing severe pain and that he had been laying on the floor unattended . . . for close to forty-five minutes." (*Id.*) Plaintiff asked them to help him, and Defendant Anderson stated that she would "go in the back and find out what's going on." (*Id.*) Plaintiff overheard Defendant Anderson ask Defendant Roedig why Plaintiff was "laying on the floor in the waiting area," and Defendant Roedig "responded, 'He has no authorization to be here so it doesn't matter to me why he's here. He's whining about his back and leg and says it hurts too much to sit in a chair. He's not too hurt to wait. . . .'" (*Id.*)

After waiting for approximately two hours, Defendant Mitteer "ushered [Plaintiff] into an office," and told him "to sit in a chair (despite [Plaintiff] having advised Mitteer of the difficulty of sitting due to severe pain)." (*Id.*, PageID.6.) Plaintiff states that he was bent over in pain, and he explained to Defendant Mitteer that "he had been experiencing lower back pain and left leg pain for the last two days, that the pain was worsening, and that earlier in the morning, he had lost

sensation in his left leg. (*Id.*) Defendant Mitteer "advised Plaintiff that she 'assumed' he was suffering from a 'strained disc' and he just needed to 'walk it off.'" (*Id.*) Plaintiff states that he did not receive an x-ray "to determine if there was nerve and/or muscle damage to his lower back causing the numbness in his left leg." (*Id.*) Plaintiff also states that he did not receive a "physical examination or adequate medical care prior to being told by Mitteer, 'There's not much we can do, just purchase som[e] pain pills from the prisoner store and walk as much as possible.'" (*Id.*) Plaintiff further states that Defendant Mitteer failed to "schedule an appointment for Plaintiff with a neurologist." (*Id.*)

Subsequently, on August 22, 2022, Plaintiff went to health services at MCF "to address persistent pain in his lower back and lower leg." (*Id.*) Plaintiff was seen by a non-party nurse Alvarez, and Plaintiff explained that he was "experience[ing] muscle spasms in his left leg." (*Id.*) Non-party nurse Alverez gave Plaintiff "10 packets of 650 mg Tylenol" and "an exercise pamphlet." (*Id.*) Plaintiff asked to be scheduled for a neurology appointment, and nurse Alverez "advised Plaintiff that he would be called to MCF health service in 2 weeks for a follow up and if pain still persists at that time an appointment with 'the provider' would be scheduled." (*Id.*, PageID.7 (capitalization corrected).) Plaintiff states that his September 5, 2022, two-week follow-up appointment "was cancelled without explanation." (*Id.*) Plaintiff's appointment was rescheduled for September 8, 2022, however, when Plaintiff arrived for the appointment, Defendant Mitteer told Plaintiff that the appointment had been cancelled with "no explanation as to why the cancellation." (*Id.*) Plaintiff then "submitted a health care request regarding persistent pain in his lower back and left leg." (*Id.*)

On September 10, 2022, Plaintiff had a scheduled medical appointment at 8:00 a.m. (*Id.*, PageID.8.) After waiting approximately thirty minutes beyond the scheduled appointment time,

Plaintiff went to the "window partition" and advised Defendants Roedig and Rexford that he "was in pain and needed to see a nurse." (*Id.*) Plaintiff also advised them that "sitting for extended periods (over 20 minutes) aggravate[d] Plaintiff's injuries." (*Id.*) In response, Defendant Roedig stated: "They'll get to you when they get to you." (*Id.*) Plaintiff then asked Defendant Rexford for "Aspirin to combat his pain while he waited to be examined," and Defendant Rexford told Plaintiff that he "[s]hould have brought [his] own aspirin with [him]." (*Id.*) At 8:54 a.m., Plaintiff told Defendant Mitteer that "he was in pain and had been waiting for close to an hour to be examined," and Plaintiff asked Mitteer for aspirin. (*Id.*) Defendant Mitteer "refused" to give Plaintiff aspirin. (*Id.*) Thereafter at 8:58 a.m., Plaintiff "was finally interviewed by nurse Rexford who simply asked Plaintiff about '[t]rouble with urination and/or bowel movement.'" (*Id.*) Plaintiff claims that at some point during the appointment, Defendant Rexford agreed with Plaintiff "on the fact that Plaintiff should have at the very least been scheduled for X-rays during his initial visit to MCF health care on June 14, 2022." (*Id.*) Defendant Rexford gave Plaintiff "10 packets of Ibuprofen . . . to combat his pain." (*Id.*)

Plaintiff contends that from August 24, 2022, through September 18, 2022, he experienced spasms and pain in his left leg and lower back. (*Id.*, PageID.7–8.) Plaintiff does not allege that he advised health services about all these instances of pain and spasms. (*See id.*)

On September 19, 2022, Plaintiff had a mental health appointment with non-party social worker Rudick. (*Id.*, PageID.8–9.) At the end of the appointment, Rudick gave Plaintiff a self-help booklet titled, "Depression and low Mood," "to aide [sic] Plaintiff in coping with mental anguish, emotional distress and depression stemming from Plaintiff's being mistreated and denigrated by herein named medical and administrative staff regarding his injuries." (*Id.*, PageID.9 (capitalization in original).)

Subsequently, on October 6, 2022, Plaintiff was seen by non-party nurse Henson, who examined Plaintiff and "acknowledge[ed] Plaintiff's lingering complications from lower back and left leg injuries." (*Id.*) Nurse Henson prescribed Plaintiff "Prednisone steroid medications to combat his injuries." (*Id.* (capitalization corrected).) Plaintiff asked Nurse Henson to schedule Plaintiff for an appointment with a neurologist, and "Henson advised Plaintiff to try the medications first and see if complications persist." (*Id.*) On October 12, 2022, "Plaintiff began a regime of Prednisone medication beginning with six 10mg tablets." (*Id.*) Plaintiff states that on October 15, 2022, he had "an abnormal tingling sensation on his face and forehead," and on October 16, 2022, he had "excessive bleeding from [his] nose." (*Id.*) Plaintiff experienced blurred vision on October 17, 2022, and that same day at 7:00 a.m., Plaintiff visited healthcare, where he advised non-party nurse Christian of his above-listed symptoms. (*Id.*) Non-party nurse Christian told Plaintiff that she "just pass[ed] out the pills," and that Plaintiff should "tell the Doctor [his] problems." (*Id.*)

Subsequently, on October 19, 2022, in response to a healthcare kite that Plaintiff had submitted regarding side effects that he was experiencing, which he believed to be from the prednisone, Plaintiff had an appointment with Defendant Hamilton. (*Id.*) At the appointment, Defendant Hamilton examined Plaintiff, and Defendant Hamilton advised Plaintiff that "some mild symptoms such as the ones he is experiencing [are] a normalcy and that symptoms would fade." (*Id.*, PageID.9–10.)

On November 8, 2022, Plaintiff submitted a healthcare request, "complaining of persistent lower back and left leg pain." (*Id.*, PageID.10.) Thereafter, on November 13, 2022, Plaintiff "began experiencing irregular bowel movements and urination." (*Id.*) On November 21, 2022, Plaintiff had a healthcare appointment with non-party nurse practitioner Henson. (*Id.*) Plaintiff advised

Henson about "excessive bowel movements," and after examining Plaintiff, Henson indicated that Plaintiff would be scheduled for an x-ray. (*Id.*) Plaintiff received an x-ray on November 23, 2022. (*Id.*)

Subsequently, on December 28, 2022, Plaintiff sent a kite to healthcare complaining of "persistent lower back pain and numbness (left hip area) as well as persistent pain in [his] left leg (left thigh area), persistent irregularities with bowel movements and to again request to be scheduled for an MRI . . . and to be seen by a neurologist." (*Id.*) In response to Plaintiff's healthcare kite, he had an appointment with non-party nurse Poulin on December 30, 2022. (*Id.*, PageID.11.) At the appointment, nurse Poulin advised Plaintiff to stretch and indicated that Plaintiff would be referred to the medical provider. (*Id.*) Thereafter, Plaintiff had an appointment with non-party nurse practitioner Henson on January 9, 2023. (*Id.*) Upon examination, nurse practitioner Henson advised Plaintiff that she would "submit a recommendation for Plaintiff to undergo an ECG [(electrocardiogram)] to determine if pain in Plaintiff's lower back and numbness in Plaintiff's hip area stem[med] from a pinched nerve." (*Id.*) Subsequently, on February 22, 2023, Plaintiff was taken to Trinity Medical Center and "was administered an EMG (Electromyograph)." (*Id.*) The physician at the hospital advised Plaintiff that "nerve damage was detected in Plaintiff's lower back." (*Id.*)

As to Defendants Washington, Russell, Schiebner, Kludy, and Wilkinson, Plaintiff seeks to hold these Defendants liable based on their supervisory positions. (*See id.*, PageID.11–12, 15.) With respect to Defendants Dominisic and Wellpath, Plaintiff states that Dominisic "is the Chief Executive Officer of Wellpath . . . , the company responsible for hiring properly trained medical personnel," and he states that Wellpath was the company "contracted with the state and entrusted

with the medical care . . . of the wards of the state of Michigan." (*Id.*, PageID.12; *see id.*, PageID.15.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment and under the Equal Protection Clause of the Fourteenth Amendment. (*See id.*, PageID.23–24.) Plaintiff also avers that Defendants violated the MDOC's policies and his rights under state law. (*See id.*, PageID.17–18, 20, 22, 23.) Plaintiff seeks a declaratory judgment, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.24–25.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.        Defendants Washington, Russell, Schiebner, Kludy & Wilkinson

Plaintiff alleges in a conclusory manner that Defendants Washington, Russell, Schiebner, Kludy, and Wilkinson are liable for the actions of their subordinates based on their supervisory positions (*see* Compl., ECF No. 1, PageID.11–12, 15); however, Plaintiff fails to allege any facts to suggest that these Defendants were personally involved in the alleged violations of his constitutional rights. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Government officials, such as Defendants Washington, Russell, Schiebner, Kludy, and Wilkinson may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*,

532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The

acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere

failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881,

888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor

denied an administrative grievance or failed to act based upon information contained in a

grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable *unless* the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." *Shehee*,
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*,

995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Washington, Russell,

Schiebner, Kludy, and Wilkinson encouraged or condoned the conduct of their subordinates, or

authorized, approved, or knowingly acquiesced in the conduct. Plaintiff alleges in a conclusory

manner that Defendants failed to adequately train and supervise their subordinates. (*See, e.g.*,

Compl., ECF No. 1, PageID.17, 20–22.) However, Plaintiff's conclusory allegations of

supervisory responsibility are insufficient to show that these Defendants were personally involved

in the alleged violations of Plaintiff's constitutional rights. Therefore, for the reasons set forth

above, Plaintiff's claims against Defendants Washington, Russell, Schiebner, Kludy, and

Wilkinson will be dismissed.

## B.      Eighth Amendment Claims

Plaintiff alleges that Defendants Anderson, Hamilton, Mitteer, Rexford, Roedig, Wellpath, and Dominisic violated his Eighth Amendment rights.

### 1.      Medical Care Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be

consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

12

> mistreatment under the Eighth Amendment. Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner. In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison

medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

(6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr.

4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete

denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has

received some medical attention and the dispute is over the adequacy of the treatment, federal

courts are generally reluctant to second guess medical judgments and to constitutionalize claims

which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466

F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007);

*McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65

(6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he

must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"

*Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.      Objective Component

In this action, Plaintiff alleges that he experienced pain in his lower back, as well as pain and numbness in his upper left leg. At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's allegations show the existence of a sufficiently serious medical need. Therefore, at this time, the Court concludes that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### b.      Subjective Component

#### (1)      Defendants Anderson, Hamilton, Mitteer, Rexford & Roedig

Although it is clear that Plaintiff disagrees with Defendants' treatment decisions, "a patient's disagreement with his physicians [or other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605. As explained below, taking Plaintiff's allegations as true and in the light most favorable to him, it is clear that Plaintiff received medical treatment from Defendants and other non-party medical providers. Indeed, in response to Plaintiff's health care kites, he was routinely scheduled for appointments with medical providers. And, even though his scheduled appointments on September 5, 2022, and September 8, 2022, were cancelled with "no explanation," Plaintiff ultimately had a medical appointment on September 10, 2022. (Compl., ECF No. 1, PageID.7, 8.)

Starting at Plaintiff's first appointment for the symptoms at issue in the complaint, he wanted to receive an x-ray and a referral to a neurologist. At Plaintiff's various medical appointments, Defendants and the other non-party medical providers followed a course of

treatment; however, Plaintiff wanted the medical providers to follow a different course of treatment that involved immediate diagnostic testing. With respect to Defendants' decisions regarding whether and when to order an x-ray or other diagnostic test, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 105; *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that prisoners are not entitled to "unqualified access to health care" (citation omitted)).

Plaintiff also faults Defendants because he had to wait approximately two hours to be seen by a medical provider on June 14, 2022, when he did not have a scheduled appointment, and approximately one hour for a scheduled medical appointment on September 10, 2022. During the two-hour wait on June 14, 2022, Plaintiff states that he had to lie on the floor "with his left leg extended outwards away from his body" because he was unable to sit due to the pain in his lower back and left leg. (Compl., ECF No. 1, PageID.5.) Plaintiff's allegations suggest that Defendants Roedig and Anderson saw Plaintiff on the floor waiting for his appointment, and Plaintiff alleges that he advised both that he was in pain. (*See id.*, PageID.4–5.) Notably, Plaintiff does not allege that Defendants Roedig and Anderson denied him medical care; instead, Plaintiff's receipt of medical care was delayed by two hours. The Court does not minimize Plaintiff's experience, however, the facts alleged by Plaintiff simply do not support an inference that Defendants Roedig and Anderson acted with deliberate indifference when Plaintiff waited two hours to be seen by a medical provider. At most, Plaintiff's allegations may suggest that Defendants Roedig and Anderson acted negligently, but an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Similarly, the actions of Defendants Roedig, Rexford, and Mitteer on September 10, 2022, as alleged by Plaintiff, do not show that Defendants acted with deliberate indifference. On that date, Plaintiff waited approximately one hour for his scheduled medical appointment, and during that time, Plaintiff states that he advised Defendants Roedig and Rexford that he was in pain and needed to see a nurse, and he requested aspirin. (*See* Compl., ECF No. 1, PageID.8.) Defendant Roedig, a correctional officer, told Plaintiff that "[t]hey'll get to you when they get to you," and Defendant Rexford, a nurse, told Plaintiff that he "[s]hould have brought [his] own aspirin with [him]." (*Id.*) Later, while Plaintiff was waiting for his appointment, he asked Defendant Mitteer, a nurse, for aspirin and Mitteer "refused." (*Id.*) Although Defendants did not provide Plaintiff with aspirin when Plaintiff requested it during the one-hour wait for his medical appointment, Plaintiff does not allege that he was otherwise unable to obtain aspirin or other pain medicine. Under the circumstances alleged by Plaintiff, Plaintiff has failed to show that Defendants acted with deliberate indifference when Plaintiff waited for an hour for a scheduled medical appointment and when Defendants did not provide Plaintiff with aspirin while he waited.

Further, Plaintiff alleges that he received inadequate medical care during his medical appointments with Defendants Mitteer, Rexford, and Hamilton. As to Defendant Mitteer, when Mitteer examined Plaintiff on June 14, 2022, Plaintiff states that "he was bent over in pain" and that he explained his symptoms of lower back pain, and pain and numbness in his left leg. (*Id.*, PageID.6.) Plaintiff claims that Defendant Mitteer "advised Plaintiff that she 'assumed' he was suffering from a 'strained disc' and he just needed to 'walk it off.'" (*Id.*) Plaintiff further claims that he did not receive an x-ray or a "physical examination or adequate medical care" before Defendant Mitteer advised Plaintiff to buy "pain pills from the prisoner store and walk as much as possible," explaining that "[t]here's not much we can do." (*Id.*) Plaintiff also faults Defendant

16

Mitteer for failing to schedule Plaintiff for a neurology appointment. (*Id.*) Although Plaintiff contends that he did not receive a "physical examination or adequate medical care," it is apparent from Plaintiff's allegations that he described his symptoms to Defendant Mitteer, and based on Plaintiff's symptoms, Defendant Mitteer's treatment plan included taking pain medicine and walking. (*Id.*) It is clear from Plaintiff's complaint that he believes Defendant Mitteer should have conducted the medical appointment in a different manner and that he disagrees with her diagnosis and treatment decision; however, Plaintiff's disagreement with Defendant Mitteer's treatment decisions is insufficient to state a § 1983 claim. *See Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)).

Similarly, with respect to Plaintiff's September 10, 2022, appointment with Defendant Rexford, Plaintiff claims that at some point during the appointment, Defendant Rexford agreed with Plaintiff "on the fact that Plaintiff should have at the very least been scheduled for X-rays during his initial visit to MCF health care on June 14, 2022." (Compl., ECF No. 1, PageID.8.) Plaintiff states that Defendant Rexford gave him "10 packets of Ibuprofen . . . to combat his pain." (*Id.*) The facts alleged by Plaintiff do not suggest that Defendant Rexford acted with deliberate indifference to Plaintiff's serious medical need. To the contrary, the facts alleged by Plaintiff suggest that Defendant Rexford was responsive to Plaintiff's concerns and prescribed him pain medication.

Likewise, Plaintiff fails to allege any facts to suggest that Defendant Hamilton acted with deliberate indifference when Plaintiff had an appointment with Hamilton on October 19, 2022, after Plaintiff had submitted a health care kite describing side effects that Plaintiff was experiencing, which he believed to be from the previously prescribed prednisone. (*Id.*, PageID.9.)

At the appointment, Defendant Hamilton examined Plaintiff and advised Plaintiff that "some mild symptoms such as the ones he is experiencing [are] a normalcy and that symptoms would fade." (*Id.*, PageID.9–10.) Defendant Hamilton "advised Plaintiff to continue with the medication regimen." (*Id.*, PageID.10.) It is again clear that Plaintiff disagreed with Defendant Hamilton's treatment plan, however, such allegations fail to state a cognizable claim under § 1983. *See Darrah*, 865 F.3d at 372; *Mitchell*, 553 F. App'x at 605. Besides the interactions addressed above, Plaintiff does not allege that he had any further interaction with Defendants Anderson, Hamilton, Mitteer, Rexford, and Roedig.

To the extent Plaintiff claims that Defendants should have diagnosed the specific nature of his medical issue at an earlier date, "the right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson*, 398 F.3d at 874; *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis"). Furthermore, the factual allegations in the complaint show that Defendants made initial diagnoses and when Plaintiff reported that he continued to experience issues with his lower back and upper left leg, as well as side effects from the prescribed medication, Defendants promptly scheduled Plaintiff for additional medical appointments and ultimately for diagnostic testing, both of which resulted in refined diagnoses. *Cf. Mitchell*, 553 F. App'x at 605 (discussing that with respect to medical treatment of a prisoner-plaintiff, "[t]he ever-shifting diagnoses in [the plaintiff's] treatment history provide[d] legitimate 'medical reasons' for many of the delays[,]

[and] [c]hoosing one doctor-supported treatment regimen over another doctor-supported treatment regimen does not amount to deliberate indifference" (citing *Rhinehart*, 509 F. App'x at 513–14.))

In summary, contrary to Plaintiff's assertion that Defendants were deliberately indifferent to his serious medical needs, Plaintiff's allegations in the complaint show that Defendants were responsive to Plaintiff's medical needs, and that they provided treatment for Plaintiff's medical complaints. *See supra* Part I. Accordingly, because Plaintiff has failed to allege facts showing that the named Defendants were deliberately indifferent or that his treatment was "so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605 (citation omitted), his Eighth Amendment claims against Defendants Anderson, Hamilton, Mitteer, Rexford, and Roedig will be dismissed.

### (2) Defendants Wellpath & Dominisic

Plaintiff names Wellpath and Wellpath CEO Dominisic as Defendants in this action. As to Defendant Wellpath, a private entity, such as Wellpath, that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*,

974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Wellpath, Wellpath's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Wellpath's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

Here, Plaintiff alleges that Wellpath is liable "through it's [sic] customs and practices." (Compl., ECF No. 1, PageID.19 (capitalization corrected).) In support of this assertion, Plaintiff lists several other lawsuits filed against Wellpath by other inmates, all of whom alleged that they were provided inadequate medical care by Wellpath. (*See id.*, PageID.20.) Additionally, Plaintiff contends that Wellpath "failed to properly train its medical personnel" and that Wellpath "hired employees who have a practice and/or custom of not providing health care to prisoners consistent with standards of medical practice in the community." (*Id.*)

20

As an initial matter, although Plaintiff states that Wellpath is liable because of its "custom" or "practice," to support this assertion, Plaintiff states that individual employees who were hired by Wellpath had "a practice and/or custom" of not providing adequate health care (*Id.*, PageID.19–20.) Plaintiff alleges no facts to suggest that Wellpath knew that its individual employees acted in this manner when hiring them. Indeed, Plaintiff's allegations regarding the existence of a custom or policy are entirely conclusory. *See Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of a policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). And, regardless, although Plaintiff believes that individual employees had a "practice and/or custom" to provide medical care that was inconsistent "with standards of medical practice in the community," the facts alleged by Plaintiff do not support this assertion. Instead, the facts alleged by Plaintiff suggest that Plaintiff simply disagreed with the medical providers' treatment plans. As discussed above, disagreement with a medical provider's "course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *see, e.g.*, *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (finding that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise independent medical judgment" (citation omitted)).

As to Defendant Dominisic, Plaintiff's allegations against Defendant Dominisic, the chief executive officer of Wellpath, are entirely conclusory and are premised on supervisory liability. Specifically, Plaintiff alleges in a conclusory manner that Defendant Dominisic "failed to hire properly trained medical personnel to work at MCF," however, Plaintiff fails to allege any facts to

support this conclusory assertion. (Compl., ECF No. 1, PageID.15.) Instead, Defendant Dominisic's liability is premised on his supervisory position, and Plaintiff fails to show that Defendant Dominisic had any personal involvement in the alleged violations of Plaintiff's constitutional rights. *See Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. This is insufficient to state § 1983 claim against Defendant Dominisic.

Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants Wellpath and Dominisic will be dismissed.

### 2.    Verbal Harassment Claim

Although not specifically articulated by Plaintiff, the Court construes Plaintiff's complaint to raise an Eighth Amendment claim regarding verbal harassment. (*See, e.g.*, Compl., ECF No. 1, PageID.5.)

The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80

(6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

Here, Plaintiff alleges that he "was subjected to ridicule and derision by [Defendant] Roedig in response to [Plaintiff's] complaint of severe pain and inability to walk, stand or sit." (Compl., ECF No. 1, PageID.5.) Plaintiff does not identify the specific statements at issue; however, presumably, Plaintiff is referring to the following statement by Defendant Roedig: "[Plaintiff] has no authorization to be here so it doesn't matter to me why he's here. He's whining about his back and leg and says it hurts too much to sit in a chair. He's not too hurt to wait. . . .'" (*Id.*; *cf. id.*, PageID.17 (alleging that this statement by Defendant Roedig constituted "intentional infliction of mental anguish and emotional distress" (capitalization omitted)).)

While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment, and this claim will be dismissed.

### C.    Fourteenth Amendment Equal Protection Claims

Plaintiff next alleges that Defendants violated his right to equal protection under the Fourteenth Amendment. (Compl., ECF No. 1, PageID.23.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City*

*of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

 Here, Plaintiff alleges that his right to equal protection under the Fourteenth Amendment was violated when he was allowed "to suffer unnecessarily . . . without need or provocation" due to a "failure to act[] or failure to intervene." (Compl., ECF No. 1, PageID.23.) Plaintiff also alleges that by "not providing Plaintiff with adequate medical care in a timely manner," Defendants violated Plaintiff's equal protection rights. (*Id.*) Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### D.    Claims Regarding Violation of the MDOC's Policies & State Law

Plaintiff also alleges that Defendants' actions violated the MDOC's policies and state law. (*See* Compl., ECF No. 1, PageID.17–19, 20, 22, 23.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or the MDOC's policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under § 1983.

Moreover, to demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Furthermore, as to Plaintiff's state law claims, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against

25

needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __August 29, 2023__                    __/s/ Paul L. Maloney_____
                                                                    Paul L. Maloney
                                                                    United States District Judge